**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JONATHAN FORBES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-17-2256 |
| | § | |
| HARRIS COUNTY, TEXAS, and | § | |
| LUCAS PAIGE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Jonathan Forbes sued Harris County, Texas and Lucas Paige, a Harris County Precinct 4 Deputy Constable, under 42 U.S.C. § 1983. Forbes alleges that Deputy Paige arrested him for driving while intoxicated, without probable cause, and that Deputy Paige made misrepresentations to an assistant district attorney and a magistrate judge to get a blood-draw warrant, resulting in a DWI charge against Forbes. Forbes alleges that Harris County had a policy or custom of making DWI arrests without probable cause and was deliberately indifferent to the need for additional or different police training on investigating suspected intoxicated drivers.

Harris County and Deputy Paige have moved for summary judgment. They argue that the undisputed record evidence shows that, as a matter of law, Deputy Paige had probable cause to arrest Forbes for driving while intoxicated; Forbes has not identified a Harris County policymaker; and Forbes has not pointed to evidence supporting a reasonable inference that there was a pattern of similar prior constitutional violations necessary to show a municipal custom or deliberate indifference. Forbes responded, and Harris County and Deputy Paige replied. (Docket Entry Nos. 28, 46, 48).

Section 1983 requires a plaintiff to show a constitutional or federal-law violation, and both qualified immunity and municipal liability present high bars. *See Arenas v. Calhoun*, No. 18-50194, 2019 WL 1870686, at *3 (5th Cir. 2019); *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017); *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Piotrowski v. City of Hous.*, 237 F.3d 567, 579–80 (5th Cir. 2001). To survive summary judgment, Forbes must show that a reasonable jury could find for him at trial based on the record evidence. He must point to evidence supporting a reasonable inference that Deputy Paige violated the Constitution or federal law and that the evidence clears the hurdles of qualified immunity and municipal liability.

After a careful review of the record evidence, motion, response, reply, and the applicable law, the court finds that, based on the undisputed record evidence, Deputy Paige had probable cause to arrest Forbes for DWI and that the magistrate judge had probable cause to issue the blood-draw warrant, regardless of Deputy Paige's alleged misrepresentation in his warrant application affidavit. Summary judgment is granted for Harris County and Deputy Paige, and an order of final judgment is separately entered. The reasons are explained in detail below.

I.    **Background**

On July 25, 2015, around 2:30 a.m., Deputy Paige was working a shift on Precinct 4's DWI task force, patrolling the Hardy Toll Road in Houston, Texas, when he saw a "brand new Corvette" in the far-right lane. (Docket Entry No. 46-10 at 8). Deputy Paige became concerned because the Corvette was "swerving back and forth inside [its] lane." (*Id.* at 11). A dashboard camera on Deputy Paige's patrol car captured what happened next.

Deputy Paige pulled closer to the Corvette from the middle lane. He stated that he wanted to "observe" and to "get a better view" of the driver. (*Id.* at 8–9). Both Deputy Paige and the

Corvette were traveling about 60 miles an hour. (Docket Entry No. 28, Ex. 5, at 00:06). The posted speed limit was 65 miles per hour. (*Id.* at 00:23–00:26). As Deputy Paige approached the Corvette, it "downshift[ed]" and sped away. (Docket Entry No. 46-10 at 9; *see also* Docket Entry No. 28, Ex. 5, at 00:18–00:40). Deputy Paige pursued, turning on his lights and siren. (Docket Entry No. 28, Ex. 5, at 00:22–00:52). He had to accelerate to 109 miles an hour to keep up with the Corvette, which finally pulled over and stopped on the highway's right shoulder. (*Id.* at 00:30–01:08).

Deputy Paige got out of his patrol car and approached the driver's side. (*Id.* at 01:20–01:40). While he was walking toward the car, Deputy Paige unholstered his handgun and ordered the driver to turn off the ignition. (*Id.*). The driver promptly did so, and Deputy Paige holstered his weapon.[1] (*Id.*). The driver complied with Deputy Paige's request to produce his driver's license. (*Id.*).

Deputy Paige asked the driver, "how are you doing tonight?" (*Id.*). The driver responded, "good, how are you?" (*Id.*). Deputy Paige said, "doin' alright," then asked, "what was that about," referring to the speeding. (*Id.* at 01:41–01:50). The driver responded with one word: "dumbass." (*Id.*).[2] Deputy Paige said, "Ok." (*Id.*). Deputy Paige testified that the driver's words were slurred, he had "the odor of alcoholic beverage," and his eyes were "red" and "glossy." (Docket Entry No. 46-10 at 11).

Deputy Paige asked the driver where he was coming from. (Docket Entry No. 28, Ex. 5, at 01:45–02:14). The driver responded, "Houston." (*Id.*). Deputy Paige then asked where he had been in Houston, and the driver said that he had eaten dinner at a restaurant. (*Id.*). Deputy Paige

---

[1] Deputy Paige testified that he unholstered his weapon because he did not know if the driver was attempting "to evade or not." (Docket Entry No. 46-10 at 11).

[2] Forbes testified that he said four words: "I am a dumbass." (Docket Entry No. 28-5 at 10).

expressed surprise and asked the driver if he had been eating dinner well after midnight.  (*Id.*).

The driver said, "pretty much, yeah."  (*Id.*).

Deputy Paige asked the driver to get out of the Corvette and stand near the trunk.  (*Id.* at

02:14–03:00).  Deputy Paige patted him down to check for weapons, found none, and then asked

the driver "how much [he] had to drink tonight?"  (*Id.*).  The driver looked at Deputy Paige and

put out his hands as if to be handcuffed.  (*Id.*).  Deputy Paige asked, "that much," and "you're not

gonna say anything?"  (*Id.*).  The driver said, "no sir."  (*Id.* at 02:43–02:55).  Deputy Paige took

this as "a refusal to answer [his] questions" or cooperate.  (Docket Entry No. 46-10 at 14, 24).

Deputy Paige handcuffed the driver, patted down his pockets a second time, and put him in the

patrol car.  (Docket Entry No. 28, Ex. 5, at 02:45–03:40).

Deputy Paige then took an inventory of the Corvette and the driver's wallet.  (*Id.* at 03:50–

08:10, 10:20–13:00).  He found a receipt in the wallet showing that the driver had been at a strip

club at 2:09 a.m. that night and had purchased 3 waters, 8 vodka drinks, 1 beer, and $1,875 in

dances.  (Docket Entry No. 28-2 at 1; Docket Entry No. 28, Ex. 5, at 11:35–12:30).[3]  The Corvette

was towed, and Deputy Paige took the driver, Jonathan Forbes, to the Houston Police Department.

(Docket Entry No. 28, Ex. 5, at 07:55–09:20; Docket Entry No. 46-10 at 11).

When Deputy Paige and Forbes arrived at the Department, Deputy Paige read Forbes a

form stating that he was under arrest for DWI and asking for a breath or blood sample.  (Docket

Entry No. 28, Ex. 5, at 49:35–53:30).  Forbes refused to give a sample.  (*Id.*; Docket Entry No. 28-

7 at 1).  Deputy Paige and an assistant district attorney went before a magistrate judge to get a

---

[3]  Forbes testified that he arrived at the strip club around midnight, was drinking with "dancers at
the club," and gave the dancers the vodka drinks.  (Docket Entry No. 28-5 at 2–3).  Forbes admitted that he
"had been drinking that night."  (*Id.* at 14).

warrant to draw a blood sample. (Docket Entry No. 46-10 at 12–13, 15). Deputy Paige reviewed and signed a warrant affidavit stating that:

> [O]n July 25, 2015[,] at approximately 2:35AM, [I] was on patrol on 20300 Hardy Toll Rd., a public place and public road located in Houston, Harris County, Texas when [I] observed a white 2015 Chevrolet Corvette motor vehicle weaving inside of its traffic lane. As [I] got closer to the Corvette, [I] observed it to rapidly accelerate away from [me] so [I] conducted a traffic stop, made contact with the driver of the Corvette and identified him by his Texas Driver's License . . . as Jonathan Robert Forbes.
>
> I came into contact with [Forbes] and noticed him to have slurred speech, glossy red eyes and a mild odor of an alcoholic beverage emitting from his breath and person.
>
> I asked [Forbes] to perform some field sobriety tests to determine [his] level of intoxication, including the Horizontal Gaze Nystagmus Test, the One Leg Stand Test[,] and the Walk and Turn Test. . . .
>
> [Forbes] refused to perform the Horizontal Gaze Nystagmus Test, the One Leg Stand Test[,] and the Walk and Turn Test.
>
> Therefore, I placed [Forbes] under arrest and transported [him] to the police station. At the station, [I] offered [Forbes] an opportunity to provide a sample of [his] breath and/or blood and [Forbes] declined to provide a sample. This is a violation of the Texas Implied Consent law and is also an indication to me that [Forbes] is attempting to hide evidence of [his] level of intoxication.

(Docket Entry No. 28-9 at 1–2).

The magistrate judge issued a warrant for a blood sample from Forbes. (Docket Entry No. 46-4). Forbes's blood was drawn around 4:00 a.m., an hour and a half after the traffic stop. (Docket Entry No. 28-3). Forbes's blood-alcohol content was 0.090, exceeding the legal limit of 0.080. (*Id.* at 2). Forbes was kept in jail overnight, until his wife posted bond the next morning. (Docket Entry No. 28-5 at 17). The DWI charge against Forbes was eventually dropped, with no reason. (*Id.* at 22–23).

In July 2017, Forbes sued Deputy Paige and Harris County in federal court, asserting violations of the Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983. (Docket

Entry No. 1 at 7–8). Forbes alleged that Deputy Paige arrested Forbes without probable cause and misrepresented that "Forbes had glossy red eyes, slurred speech, a mild odor of alcohol, that he placed his hands out in front of him to be arrested, and that he refused to do any testing." (*Id.* at 3–4). Forbes alleged that, based on "these falsehoods," the magistrate judge issued the "blood draw warrant" and Forbes was charged with a misdemeanor DWI offense. (*Id.* at 4).

After Harris County moved for judgment on the pleadings, Forbes moved for leave to amend, and the court granted Forbes leave. (Docket Entry Nos. 23–24, 26).

Harris County and Deputy Paige answered the amended complaint and moved for summary judgment. (Docket Entry No. 27–28). Their summary judgment motion contends that the undisputed record evidence shows that Deputy Paige had probable cause to arrest Forbes for DWI; Forbes has not identified evidence supporting a reasonable inference that Harris County had a policy or custom of making DWI arrests without probable cause; Forbes has not identified a proper Harris County policymaker; and Forbes has not identified evidence supporting a reasonable inference that Harris County was deliberately indifferent to a need for additional or different training. (Docket Entry No. 28 at 19–30). Harris County and Deputy Paige attached a number of documents to their motion, including a video recording of the traffic stop, the strip-club receipt, Forbes's blood-test results, two expert reports, Forbes's deposition, Forbes's refusal to give a blood or breath sample, and Deputy Paige's warrant application affidavit. (Docket Entry Nos. 28-1–28-10). Harris County and Deputy Paige supplemented their motion with an affidavit by Harold Herrin, the Precinct 4 Captain, stating that there was a single complaint of wrongful arrest for DWI between December 2012 and December 2017. (Docket Entry No. 40-2).

Forbes responded and submitted documents, including the traffic-stop video recording; the district-attorney intake documents for Forbes's arrest; the warrant to draw Forbes's blood; Deputy

Paige's report and Forbes's refusal to give a breath or blood sample; arrest reports from a website called The Police News; an expert report; a declaration from Forbes; and Deputy Paige's deposition. (Docket Entry Nos. 46-1–46-10). Forbes argues that without Deputy Paige's "lies . . . there would not have been the very intrusive blood draw" that violated the Fourth and Fourteenth Amendments. (Docket Entry No. 46 at 10). Forbes contends that the record evidence supports a reasonable inference that Deputy Paige lacked probable cause to make the arrest, "supplied false information and omitted exculpatory information" in his warrant application affidavit; Deputy Paige's misrepresentations establish a malicious prosecution claim under the Fourteenth Amendment; Ron Hickman and Mark Herman of Precinct 4 were the relevant policymakers; Deputy Paige lacked "field training in DWI stops"; 21 of Forbes's "DWI cases have been dismissed"; and Harris County ratified Deputy Paige's conduct by failing to discipline him after Forbes filed his complaint. (*Id.* at 14–19). Forbes also argues that Harris County's and Deputy Paige's summary judgment evidence does not come from "disinterested witnesses." (*Id.* at 13 (emphasis omitted)).[4]

Harris County and Forbes replied. (Docket Entry No. 48). They object to "The Police News" articles as hearsay and to Forbes's declaration as irrelevant and conclusory. (*Id.* at 1–2). Harris County and Deputy Paige argue that Deputy Paige had probable cause for the arrest and that the blood-draw warrant was supported by probable cause; Forbes's amended complaint did not assert a malicious-prosecution claim, which is not cognizable under the Fourth Amendment; Harris County did not ratify Deputy Paige's conduct; and Forbes has not presented a pattern of

---

[4] Forbes has moved to correct an error related to the numbering of exhibits in his response brief. (Docket Entry No. 49). Harris County and Deputy Paige do not oppose the motion. Forbes's motion to correct his response brief is granted.

similar incidents to support a reasonable inference of a Harris County custom or deliberate indifference to a need for different or additional training. (*Id.* at 2–9).

The parties' arguments are examined below.

## II. Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl.,*

*L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

## III.    Analysis

### A.    Section 1983

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under the color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (alterations omitted) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "Municipalities are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). To succeed on a § 1983 claim against a municipality,

the plaintiff must allege and prove a constitutional or federal law violation. *Hicks-Fields*, 860 F.3d at 808; *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc).

### B. Fourteenth Amendment

Forbes appears to assert a Fourteenth Amendment due-process violation,[5] but the amended complaint states only that "[t]he Fourteenth Amendment guarantees everyone the right not to be deprived of liberty without due process of law." (Docket Entry No. 24-2 at 8). Forbes cites to *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016). In that case, the Fifth Circuit held that "[w]here police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation." *Id.* at 773. The Fifth Circuit stated that "where there is no more specific constitutional protection available, the Fourteenth Amendment may offer protection." *Id.* at 772.[6] *Cole* addressed police officers who allegedly fabricated evidence and "concocted" an aggravated assault charge to justify their use of deadly force against a high-school student armed with a handgun. *Id.* at 755–56.

---

[5] Forbes also appears to assert a Fifth Amendment violation. "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Forbes has sued a Texas police officer and a Texas municipality. The Fifth Amendment does not apply.

[6] *See Cole*, 802 F.3d at 772 ("[T]hese wrongs may be addressed through a Fourth Amendment challenge in many cases."); *Gregory v. City of Louisville*, 444 F.3d 725, 750 (5th Cir. 2006) ("[T]he subset of malicious prosecution claims which allege continued detention without probable cause must be pursued and analyzed under the Fourth Amendment."); *Jones v. Perez*, No. 16-CV-2835, 2017 WL 4238700, at *10 (N.D. Tex. Sept. 25, 2017) ("[B]ecause the Fourth Amendment protects against the type of conduct alleged in the complaint, Jones's claim is 'covered by' the Fourth Amendment and should be analyzed only under that constitutional provision."); *Saturn v. Barnett*, No. 16-CA-505, 2016 WL 7392240, at *3 (W.D. Tex. Dec. 20, 2016) ("In addition to showing intentional police fabrication, the plaintiff needs to allege facts that show the claim cannot be brought under the Fourth Amendment."); *Guillory v. Dalbour*, No. 15-CV-2452, 2016 WL 5415072, at *5 (W.D. La. Sept. 27, 2016) ("[W]here the Fourth Amendment claim is not viable, the plaintiff may bring the claim as a Fourteenth Amendment due process claim.").

Forbes's allegations that Deputy Paige misrepresented the basis for probable to issue a blood draw warrant in his warrant application affidavit fall under the Fourth Amendment. *See Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) ("[A] defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause." (quoting *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018))). The Fourth Amendment, not the Fourteenth Amendment's due-process clause, applies.

Even assuming that Forbes's claims are properly considered under the Fourteenth Amendment, the Fifth Circuit's *Cole* decision did not issue until September 2015, after Forbes's July DWI arrest in July. The Fourteenth Amendment due-process right against an officer's intentional fabrication of evidence to arrest or obtain a blood-draw warrant was not "clearly established law" at the time. *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019). And Forbes has not identified evidence of similar prior instances in which Harris County officers intentionally falsified evidence for criminal charges or warrants, as necessary for him to raise a factual dispute material to deciding that Harris County had a custom of intentionally fabricating evidence or was on "actual or construction notice" of a constitutional flaw in its training program.[7] *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The current record shows that, as a matter of law, Forbes's Fourteenth Amendment due-process claim could not succeed against Deputy Paige or Harris County.

---

[7] Forbes has pointed to the allegations of two complaints from pending litigation in the Southern District of Texas, but those pleadings are not competent summary judgment evidence. *See Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 381 (5th Cir. 2011) ("Pleadings are not competent summary-judgment evidence." (citing *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996))).

B.    **Fourth Amendment**

1.    **The Warrantless Arrest**

Forbes alleges that Deputy Paige violated the Fourth Amendment[8] by arresting him without probable cause and intentionally misrepresenting a material fact in the warrant application affidavit for the blood draw.  These alleged Fourth Amendment violations are necessary for his § 1983 claims against Deputy Paige and Harris County.  The court begins by examining whether Forbes has submitted or identified evidence supporting a reasonable inference that Deputy Paige lacked probable cause for the arrest or intentionally made material misstatements in the warrant application affidavit, in violation of the Fourth Amendment.  Because the court finds that Forbes has not done so, his § 1983 claims fail.

"The Fourth Amendment guarantees 'the right of the people to be secure in their persons against unreasonable searches and seizures and that no warrants shall issue, but upon probable cause." *Arizmendi*, 919 F.3d at 897 (alterations omitted) (quoting U.S. CONST. amend. IV).  A warrantless arrest violates a suspect's Fourth Amendment rights "if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985).

"Probable cause is established by 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arizmendi*, 919 F.3d at 897 (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)).  The probable-cause analysis is objective.  Probable cause exists "if the officer

---

[8] The Fourth Amendment prohibition against unreasonable searches and seizures applies to the states through the Fourteenth Amendment.  *See Mapp v. Ohio*, 367 U.S. 643, 655–60 (1961).

was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro*, 568 F.3d at 204.

"Because probable cause deals with probabilities and depends on the totality of the circumstances, . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations omitted). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such an activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "Probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014)).

Deputy Paige arrested Forbes for DWI. Under Texas law, "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a). "Intoxicated" is defined as (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or another substance, or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2).

Forbes states in his deposition and declaration that he was driving within the speed limit, was not weaving in his lane or driving erratically, had clear eyes, did not slur his words or stagger, and did not smell of alcohol. (Docket Entry No. 28-5 at 5; Docket Entry No. 46-9 at 2). He bases his argument that Deputy Paige lacked probable cause on these statements. Forbes argues that "summary judgment cannot rest on the statements of interested witnesses—the individual defendant officer and fellow Harris County Employees." (Docket Entry No. 46 at 13). Of course, he, too, is an interested witness. And when, as here, "there is a videotape that discredits the non-movant's description of facts," the court may "consider the facts in the light depicted by the videotape." *Shepherd*, 920 F.3d at 283 (quotation omitted); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

The video evidence shows that, around 2:30 a.m., Forbes's Corvette was drifting around in the far-right lane, repeatedly nearing the line dividing the lanes. (Docket Entry No. 28, Ex. 5, at 00:01–00:18). The Corvette suddenly accelerated, obviously above the posted speed limit of 65 miles an hour. (*Id.* at 00:18–00:50). Forbes's speech sounded slurred. Forbes told Deputy Paige that he sped up because it, or he, was "dumbass." (*Id.* at 01:40–1:50). Forbes stated that he had "pretty much" been at a restaurant until 2:00 a.m. (*Id.* at 01:55–02:12). When Deputy Paige asked Forbes how much he had had to drink, Forbes did not respond, but he appeared to hold out his hands as if to be handcuffed. (*Id.* at 02:45–03:10). Surprised, Deputy Paige asked, "that much?" (*Id.*). Forbes still did not respond. Deputy Paige then asked Forbes if he was going to answer questions, and Forbes said, "no sir." (*Id.*).

Deputy Paige found a strip-club receipt in Forbes's wallet showing that Forbes had purchased 1 beer and 8 vodka drinks that night and into the morning. (*Id.* at 11:35–12:30; Docket Entry No. 28-2). He was at the strip club long enough to spend $1,875 in dances. Forbes refused to give a breath or blood sample at the Police Department. *See, e.g.*, *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) ("Mr. Miller's refusal to take a breathalyzer test, coupled with the smell of alcohol from the vehicle, gave Officer Harget probable cause to arrest him."); *Tex. Dep't of Pub. Safety v. Castro*, 406 S.W.3d 782, 788 (Tex. App.—El Paso 2013, no pet.) ("A person's refusal to participate in field sobriety testing is a factor that may be considered in the totality of the circumstances when determining whether probable cause exists.").

Deputy Paige said that he smelled alcohol on Forbes and that Forbes's eyes were glossy and red. These observations were later corroborated by Forbes's testimony, and by Forbes's blood draw showing that even an hour and a half after he had left the club, driven some distance, and

been stopped and arrested, his blood-alcohol concentration exceeded the legal limit. (Docket Entry No. 28-3; Docket Entry No. 28-5 at 4, 12).

This undisputed record evidence establishes that, as a matter of law, the events leading to Forbes's arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby*, 138 S. Ct. at 586 (quotation omitted); *see, e.g.*, *Rife v. City of Dallas*, 91 F.3d 139, 139 (5th Cir. 1996) (per curiam) (probable cause existed when a suspect was stopped for speeding, "smelled of alcohol," and "had bloodshot eyes and stumbling speech"); *Holton v. Mohon*, 684 F. Supp. 1407, 1413 (N.D. Tex. 1987) (a driver's loud and slurred speech and smell of alcohol supported a probable-cause finding). There was ample evidence for a reasonably prudent officer in Deputy Paige's position to find that Forbes had been driving the Corvette while intoxicated, violating Texas law.

Forbes makes much of Deputy Paige's decision to arrest him without asking him to perform field sobriety tests. (*See* Docket Entry Nos. 24-2, 46, 46-9). But Forbes has not cited to legal authority requiring a field sobriety test to establish probable cause for a DWI arrest, and the court has found none. *See United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) ("Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances." (quotation omitted)); *cf. McCoy v. Housing Auth. of New Orleans*, No. 15-398, 2016 WL 2992528, at *4 (E.D. La. May 24, 2016) ("[P]robable cause . . . does not require officers to administer a field sobriety test, as an officer may base probable cause on his reasonable observation and past experience."). Besides the signs of intoxication Deputy Paige saw, Forbes told Deputy Paige that he would not answer questions about how much he had been drinking, instead holding out his hands as if to be handcuffed. A reasonable officer

would objectively believe that Forbes had no interest in cooperating further, including for a field sobriety test. Forbes later declined to give a breath or blood sample.

Because the undisputed record evidence shows probable cause for Deputy Paige to believe that Forbes had been driving the Corvette while intoxicated, there was no Fourth Amendment violation arising from the warrantless arrest. And even if there was not actual probable cause, Deputy Paige would be entitled to qualified immunity because his conclusion that he had probable cause to arrest Forbes for DWI was a reasonable one under the circumstances. *See Westfall v. Luna*, 903 F.3d 534, 543 (5th Cir. 2018) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

## 2. The Warrant Application Affidavit

Forbes also asserts a false-arrest claim under the Fourth Amendment.[9] "A constitutional claim for false arrest" requires "a showing of no probable cause." *Arizmendi*, 919 F.3d at 897 (quoting *Club Retro*, 568 F.3d at 204). "[I]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate [judge] or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Id.* (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)). An exception exists when the "deliberations of the intermediary were in some way tainted by the actions of the defendant." *Id.* (quoting *McLin*, 866 F.3d at 689). "[E]ven if an independent magistrate [judge] approves a warrant application, 'a defendant's Fourth Amendment rights are violated if (1) the affiant, in

---

[9] Forbes styles his claim as one for malicious prosecution under the Fourth Amendment. (Docket Entry No. 46 at 16–17). The Fifth Circuit has clarified that "[s]uch claims of lost constitutional rights are for violation of rights locatable in the constitutional text"; "they are not claims for malicious prosecution and labeling them as such only invites confusion." *Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc).

support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause.'" *Id.* (quoting *Winfrey*, 901 F.3d at 494); *see also Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  If an affidavit supporting a search warrant contains faults, the court must "consider the faulty affidavit as if the errors or omissions were removed, and then examine the corrected affidavit and determine whether the probable cause for the issuance of the warrant survives the deleted false statements and material omissions." *Arizmendi*, 919 F.3d at 898 (alterations omitted) (quoting *Winfrey*, 901 F.3d at 495).

Deputy Paige's warrant application affidavit does contain a fault.  It states that Deputy Paige asked Forbes "to perform some sobriety tests to determine [his] level of intoxication" and that Forbes "refused to perform" them.  (Docket Entry No. 28-9 at 2).  Deputy Paige has admitted that these statements were "incorrect" because he did not ask Forbes to perform field-sobriety tests. (Docket Entry No. 46-10 at 15).

Other than the affidavit, which Deputy Paige signed but did not write, Forbes has not identified evidence supporting an inference that Deputy Paige made the misstatement "knowingly and intentionally, or with reckless disregard for the truth." *Arizmendi*, 919 F.3d at 897 (quotation omitted); *see Hyland v. State*, No. 16-596-CR, 2018 WL 1633487, at *6 (Tex. App.—Corpus Christi-Edinburg Apr. 4, 2018, pet. granted) ("[T]he affiant must bear responsibility for the contents of a sworn affidavit presented to a magistrate [judge] for signature." (quotation omitted)). Deputy Paige testified that the fault was "a simple error" and that he had no intent "to mislead." (Docket Entry No. 46-10 at 15, 17).  In the traffic-stop video, Forbes told Deputy Paige that he would not answer questions related to how much he had to drink, and instead held out his hands as if to be handcuffed.  Deputy Paige told the district attorney's office: "[Forbes] did not want to

make any statements or attempt any Standardized Field Sobriety Tests." (Docket Entry No. 46-3 at 1). Because Forbes's conduct would have led a reasonable officer to believe that he had no interest in cooperating in the DWI investigation, including by taking a field-sobriety test, there is no basis to find that the misstatement was made in a "reckless disregard for the truth." *Arizmendi*, 919 F.3d at 897 (quotation omitted); *see State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 705 (Tex. App.—El Paso 2009, no pet.) ("A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not make the warrant invalid.").

Even without the misstatement, the warrant application affidavit contained enough facts for the magistrate judge to conclude that there was probable cause for a blood draw. "Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate [judge] in an affidavit, there is at least a 'fair probability' or 'substantial chance' that the contraband or evidence of a crime will be found." *Farhat v. State*, 337 S.W.3d 302, 306 (Tex. App.—Fort Worth 2011, pet denied) (quoting *Gates*, 462 U.S. at 257 n.13). "[R]eview of a [magistrate judge's] probable cause determination supporting the issuance of a search warrant is constrained to the four corners of the affidavit." *Nava v. State*, No. 11-127-CR, 2012 WL 3364230, at *3 (Tex. App.—El Paso Aug. 15, 2012, no pet.). The court must "interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate [judge] may draw reasonable inferences," *Farhat*, 337 S.W.3d at 306, and focusing "on the combined logical force of facts that actually are in the affidavit," *State v. Crawford*, 463 S.W.3d 923, 929 (Tex. App.—Fort Worth 2015, no pet.).

When a "search warrant sought is for blood evidence to prove intoxication, the magistrate [judge] typically must determine probable cause exists that a blood test would provide evidence

showing [the arrestee] was intoxicated." *Islas v. State*, 562 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "Evidence of intoxication may include, for example, slurred speech, bloodshot eyes, or the odor of alcohol on the breath." *Id.*

The warrant application affidavit stated that: Deputy Paige was a certified peace officer who has completed courses in alcohol detection; the Corvette was "weaving inside of its traffic lane" at 2:35 a.m. and "rapidly accelerate[d]" as Deputy Paige approached; Forbes, the driver, had "slurred speech, glossy red eyes[,] and a mild odor of an alcoholic beverage emitting from his breath and person"; and Forbes decline to provide a blood or breath sample. (Docket Entry No. 28-9 at 1–2). Because probable cause does not impose "a high bar," *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014), these facts, viewed together, amply provided the magistrate judge a basis to find a "fair probability" that a blood test would provide evidence that Forbes was driving while intoxicated, *Gates*, 462 U.S. at 238; *see Thom v. State*, 437 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Erratic driving as well as post-driving behavior, including slurring of speech, inability to perform field-sobriety tests, bloodshot eyes and admissions by the suspect concerning what, when, and how much he had been drinking, all constitute evidence that would raise an inference that appellant was intoxicated at the time of driving.").[10] Even without the

---

[10] *See, e.g.*, *Stevens v. State*, No. 14-483-CR, 2016 WL 3752915, at *3–*4 (Tex. App.—Austin July 7, 2016, no pet.); *Lopez v. State*, No. 14-312-CR, 2016 WL 929402, at *4–*5 (Tex. App.—Houston [14th Dist.] Mar. 10, 2016); *State v. Castro*, No. 13-146-CR, 2014 WL 4808738, at *4 (Tex. App.—Amarillo Sept. 23, 2014, no pet.) ("Appellee smelled of alcoholic beverage, his eyes were glassy and his speech was slurred. In addition, he refused to participate in any field sobriety tests, and after he was arrested and transported to jail, he refused to give a blood sample."); *Kelly v. State*, 413 S.W.3d 164, 173–74 (Tex. App.—Beaumont 2013, no pet.); *Foley v. State*, 327 S.W.3d 907, 912, Tex. App.—Corpus Christi 2010, pet. denied) (probable cause existed for a blood draw where the defendant "smelled strongly of alcohol, had red and glassy eyes, slurred speech, poor balance, and . . . refused to provide a breath or blood sample"); *Nava*, 2012 WL 3364230, at *3 ("The magistrate [judge] could have inferred that Appellant had committed a DWI offense from his refusal to submit a breath test."); *Martin v. State*, No. 08-128-CR, 2009 WL 2414294, at *3 (Tex. App.—Fort Worth 2009, no pet.); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (probable cause existed for an arrest where the defendant veered into an adjacent lane four times, smelled of alcohol, and admitted that he had been drinking). *But see Hyland*, 2018

statement that Forbes refused to take a field sobriety test, the warrant-application affidavit contained enough information for the magistrate judge to find probable cause. Forbes's constitutional false-arrest claim fails.

Because the undisputed record evidence shows that there was probable cause for both the arrest and the blood draw, Forbes has not shown a factual dispute material to deciding that Deputy Paige did not violate his Fourth Amendment rights. Without an underlying constitutional violation, Forbes cannot succeed on his § 1983 claims against Deputy Paige or Harris County. *See, e.g.*, *Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018) ("Because Romero has failed to demonstrate that Villalpando's Fourth Amendment rights were violated, her claims against the City and Salame for failure to train and inadequate screening/hiring cannot survive."); *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 (5th Cir. 2016) ("Because Salazar has not shown a violation of his constitutional rights, however, all of his *Monell* claims against the City of Houston fail as a matter of law."); *Whitley*, 726 F.3d at 648–49 ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("[A] municipality cannot be liable [i]f a person has suffered no constitutional injury at the hands of an individual police officer." (quotation omitted)).

## C.     Municipal Liability

Even assuming that Deputy Paige had violated the Fourth or Fourteenth Amendments, Forbes would still have to show a policy, custom, or deliberate indifference to a need for additional or different training to succeed in his § 1983 claim against Harris County. Forbes has asserted that

WL 1633487, at *6 (the strong odor of alcohol alone is not enough to support probable cause for a blood draw).

"Harris County is liable for plaintiff's constitutional violations for a custom, practice, policy[,] and procedure" of:

    a.    failing to train;

    b.    failing to discipline including firing and reassignment;

    c.    arresting people without probable cause;

    d.    failing to investigate; and

    e.    failing to supervise.

(Docket Entry No. 24-2 at 8–9). Forbes has the burden to prove "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Witchita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 578). Forbes may show an official policy by demonstrating "a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at 169 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). Because Forbes has not alleged that "a final policymaker took a single unconstitutional action," he must show "a pattern of unconstitutional conduct" from "municipal actors or employees." *Id.* (emphasis omitted). "A pattern requires similarity and specificity; prior incidents cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (alteration and quotation omitted).

Forbes has not submitted or identified evidence supporting a reasonable inference of a pattern of Harris County police making warrantless arrests without probable cause. Forbes has submitted arrest reports from "The Police News" website, which, even if admissible over Harris

County's objection, do not suggest wrongdoing by the arresting officers, or even indicate whether those arrests were made with a warrant or probable cause. Forbes stated that 21 of "Deputy Paige's DWI cases have been dismissed." (Docket Entry No. 46 at 18). Harris County submitted the records from those DWI cases, showing that most were dismissed because the defendants completed pretrial intervention. (Docket Entry No. 48-3). Forbes also submitted the complaints from two cases pending in the Southern District of Texas involving an alleged wrongful arrest and home entry by police officers. (Docket Entry Nos. 7–8). Pleadings are not competent summary judgment evidence, and, even if they were, the two other incidents would not amount to "a persistent widespread practice" of arrests without probable cause. *Zarnow*, 614 F.3d at 169 (quotation omitted); *see Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 381 (5th Cir. 2011) ("Pleadings are not competent summary-judgment evidence." (citing *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996))). Forbes has neither submitted nor identified evidence supporting a reasonable inference of an official Harris County policy or custom that was the moving force behind the alleged constitutional violations.

For his failure-to-train claim, Forbes must point to evidence supporting a reasonable inference that: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow*, 614 F.3d at 170. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

Forbes has not submitted or identified evidence on Harris County's training for DWI detection and investigations. As discussed, he has identified no evidence of similar prior

constitutional violations by Harris County officers. He has alleged only that "Ron Herman made a statement after the arrest of [Forbes] and after he had become Constable of Precinct 4, Harris County that he has no knowledge of proper police stop procedures." (Docket Entry No. 46 at 18). This unsupported allegation, even if true, had nothing to do with probable cause for warrantless DWI arrests and would not show that he "disregarded a known or obvious consequence" of the Precinct's training. *Connick*, 563 U.S. at 61 (quoting *Bryan Cty.* 520 U.S. at 410).

Forbes alleges that Deputy Paige "lacked the training to do DWI investigations and arrests." (Docket Entry No. 46 at 18). In his warrant application affidavit, Deputy Paige stated:

> I, Officer L. Paige, am employed with the Harris County Constables Office Pct. 4 as a certified peace officer in the State of Texas. In my position as a peace officer with the Harris County Constables Office Pct. 4, I have successfully completed the state mandated requirements to become a peace officer and have also completed my department's requirements for employment in my field.
>
> Additionally, I have successfully completed the following courses in the field of alcohol detection: the National Highway and Traffic Safety Administration Standardized Field Sobriety Testing Course. Standard Field Sobriety Tests (SFSTs) include, but are not limited to, the Horizontal Gaze Nystagmus (HGN), one leg stand (OLS) and/or the walk and turn (WAT).

(Docket Entry No. 28-9 at 1). Forbes argues that Deputy Paige had "no field training in DWI stops." (Docket Entry No. 46 at 18). But Deputy Paige testified that he had "fifty or sixty" DWI arrests before being assigned to the DWI task force, and that he had received "refresher courses" on DWI detection and investigation after becoming a Precinct 4 deputy constable. (Docket Entry No. 46-10 at 10, 18–19). Forbes has not identified evidence supporting a reasonable inference that Deputy Paige received inadequate training.[11] Even if such evidence was present, that is not enough for the City to be liable. *See City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) ("That a

---

[11] Forbes's expert report does not opine on the adequacy of Deputy Forbes training or Harris County's training program. (*See* Docket Entry No. 46-7).

particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Forbes asserts that Harris County ratified Deputy Paige's unconstitutional actions by failing to discipline him after Forbes filed a complaint. (Docket Entry No. 46 at 18). "If a final policymaker approves a subordinate's recommendation and also that subordinate's reasoning, that approval is considered a ratification chargeable to the municipality." *Culbertson v. Lykos*, 790 F.3d 608, 621 (5th Cir. 2015). This theory "has been limited to 'extreme factual situations.'" *Id.* (quoting *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)). Forbes has not identified evidence supporting an inference of an "extreme factual situation" showing that Harris County approved Forbes's "decision and the basis for it." *Id.* at 621–22 (quotations omitted). The Fifth Circuit has held that a refusal to discipline an employee, standing alone, is "wholly insufficient to satisfy the nonmovants' summary judgment burden" for ratification. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). Based on the current record, the court has no basis to find that Harris County ratified Deputy Paige's conduct.

Forbes has not submitted or identified evidence supporting a reasonable inference that Harris County could be held liable under § 1983. This claim is dismissed on summary judgment.

## IV.     Conclusion

Forbes's motion to correct his summary judgment response is granted. (Docket Entry No. 49). Harris County's and Deputy Paige's motion for summary judgment is granted. (Docket Entry Nos. 28, 40). Final judgment is separately entered.

SIGNED on May 13, 2019, at Houston, Texas.

_____
                         Lee H. Rosenthal
                         Chief United States District Judge